# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE: MARGARET ANN JOHNSSON   )
     Pro Se Debtor and Party in Interest  )    Chapter 7
_____  )    Case No. 11-B-38307
     )
MARGARET ANN JOHNSSON    )
     Plaintiff     )    Honorable Timothy A. Barnes
     v.     )    Adversary Proc. No. 16-A-_____
CATHERINE L. STEEGE ESQ,   )
LANDON RAIFORD ESQ,    )
KATY GLEASON and the    )
OFFICE OF THE U.S. TRUSTEE  )
     Defendants    )

**F I L E D**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

**APR 11 2016**

JEFFREY P. ALLSTEADT, CLERK

## ADVERSARY COMPLAINT

The Pro Se Debtor/Party In Interest/Plaintiff, Margaret Ann Johnsson, ("Pro Se Debtor-Party In Interest"), complains against Catherine L. Steege, ("Catherine Steege"), Landon Raiford, ("Landon Raiford") and/or any of their representatives/colleagues from their law firm, Jenner & Block LLP, and against Katy Gleason and/or any other representative of the Office of the United States Trustee, (which office outsourced their job as the trustee of Ms. Johnsson's bankruptcy estate to Catherine L. Steege), and hereby states as follows.

### JURISDICTION AND VENUE

1.    This Court has jurisdiction pursuant to 28 U.S.C. §1334(b) and (e) because this adversary proceeding arises in and relates to the Pro Se Debtor-Party In Interest's Chapter 7 case, Case No. 11 B 38307, which is pending in this Honorable Court. This adversary proceeding directly relates to Adversary Complaint #16-A-00235 which is currently pending before this Honorable Court.

2.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(a),

(b), (c) and/or(d), and is brought pursuant to Fed. Rules of Bankruptcy Procedure 7001 and 9014.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1409(a) and/or (e).

## PARTIES

1.      Margaret Ann Johnsson is the Pro Se Debtor and Party In Interest in the above-

captioned chapter 7 bankruptcy case, and is the Pro Se Plaintiff in both this adversary proceeding

and in the related Adversary Complaint #16-A-00235, all three of which matters are pending

before the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division,

Honorable Timothy A. Barnes, presiding. Margaret Ann Johnsson is the only party to these

proceedings who is actively seeking to obtain payment for her bankruptcy estate creditors, whom

collectively are owed only $149,644.00, and to preserve her debtor's surplus, which debtor's

surplus was estimated to be worth hundreds of thousands of dollars to millions of dollars until

Catherine L. Steege spent the last four and a half years: a) refusing to take possession of and/or

liquidate assets, (Bankr. Dkt.  b) granting over 99% of Margaret Ann Johnsson's bankruptcy

estate assets and income to Mark Bernard Rittmanic, (Margaret Ann Johnsson's ex-husband),

which assets and income had an estimated net value of over ten million dollars,

($10,000,000.00), in exchange for only one hundred twenty thousand dollars, ($120,000.00),

(Bankr. Dkt. 198, 202, 204, 234, 257), and c) maximizing the amount of billable revenue to be

paid to Catherine Steege's law firm, Jenner & Block LLP, (Bankr. Dkt. 337), which has now

accrued a legal fees bill estimated to be in excess of two hundred fifty thousand dollars,

($250,000.00), related to Margaret Ann Johnsson's bankruptcy case.

2.      Catherine L. Steege is a senior partner at the law firm Jenner & Block LLP, and is

the private chapter 7 bankruptcy trustee to whom the Office of the United States Trustee

2

outsourced Margaret Ann Johnsson's bankruptcy case. On June 26, 2012, Catherine Steege received the Court's authorization to hire herself as a billable attorney/advisor to herself on the Pro Se Debtor-Party In Interest's bankruptcy case, so as to facilitate Catherine Steege earning significantly more money than is allotted by the U.S. Bankruptcy system to compensate bankruptcy estate trustees, so as to maximize the amount of billable revenue earned by Catherine Steege's law firm, Jenner & Block, LLP, on this case, and so as to put a legal shield around all of Catherine Steege's actions and failures to act. (Bankr. Dkt. 59 and Bankr. Dkt. 70) Note that Catherine Steege's motion to hire herself (Bankr. Dkt. 59) also sought to hire any and all billable staff from Catherine Steege's law firm, Jenner & Block LLP, as Catherine Steege saw fit to hire, but due to the Pro Se Debtor-Party In Interest's objections, only one additional attorney, Lauren Sylvester Berheide[1], was specifically approved by the Court to act as Catherine Steege's billable attorney/advisor to Catherine Steege, in addition to Catherine Steege acting/billing as her own billable attorney on the Pro Se Debtor-Party In Interest's bankruptcy case (Bankr. Dkt. 70).

3.      Landon Raiford is one of eight of Catherine Steege's billable subordinates from Catherine Steege's law firm, Jenner & Block LLP, that have been billing on this case for the past four and a half years (Bankr. Dkt. 337): a) to draft and file pleadings most of which argued against taking possession of and liquidating bankruptcy estate assets/income; b) to appear in court in lieu of Catherine Steege appearing in court on her own behalf or in her fiduciary duty on behalf of the Pro Se Debtor-Party In Interest's creditors/bankruptcy estate/debtor's surplus,

---

[1] Lauren Sylvester Berheide resigned from Jenner & Block LLP in September, 2012. While Lauren Sylvester Berheide was the only billable attorney from Catherine L. Steege's law firm, Jenner & Block LLP that was actually approved to be hired by Catherine Steege to act as Catherine Steege's attorney on this case (Bankr. Dkt. 70), it was not until August 20, 2013 that Lauren Sylvester Berheide filed her own petition to be removed as Catherine Steege's attorney of record (Bankr. Dkt. 249), which petition was filed immediately after Margaret Ann Johnsson's 226-page petition (Bankr. Dkt. 238) to remove Catherine Steege as trustee (wherein Margaret Ann Johnsson had reviewed 1000 of Catherine Steege's cases and proved that Catherine Steege was highly negligent, if not fraudulent, in the handling of her chapter 7 bankruptcy cases), was denied by Judge Timothy A. Barnes (Bankr. Dkt. 246).

and/or c) to bill the Pro Se Debtor-Party In Interest's bankruptcy estate way above and beyond

the amount/parameters allowed by the U.S. bankruptcy system for bankruptcy trustees for acting

in lieu of Catherine Steege to fulfill Catherine Steege's fiduciary responsibility as the outsourced

bankruptcy trustee charged with preserving and maximizing payments to Margaret Ann

Johnsson's bankruptcy estate creditors and Margaret Ann Johnsson's debtor's surplus. There has

never been a motion or pleading filed with the U.S. Bankruptcy Court to seek authorization for

Landon Raiford to represent Catherine Steege or to act as Catherine Steege's attorney or billable

advisor, as Judge Timothy A. Barnes' second order (Bankr. Dkt. 251), which order was signed

on a day Judge Timothy A. Barnes was not sitting, not only approved the withdrawal of Lauren

Sylvester Berheide and the substitution of Michael Kelly as Catherine Steege's attorney of

record, but also opened the floodgates to allow for any and all Jenner & Block LLP employees to

bill on this case. Landon Raiford did file a notice of substitution (Bankr. Dkt. 290) for Landon

Raiford to replace Michael Kelly when Michael Kelly[2] suddenly resigned from Jenner & Block

LLP in the midst of this case. It should be noted that Michael Kelly was the second Jenner &

Block LLP attorney to suddenly resign from Jenner & Block LLP in the midst of this case[3].

Finally it should also be noted that Landon Raiford continued the pattern set by Michael Kelly of

---

[2] Michael Kelly was the billable subordinate of Catherine Steege's who appeared in court in lieu of Catherine Steege for the two-year period of July, 2012 through July, 2014 when Catherine Steege was absent from all court proceedings in this matter, with the sole exception of when Catherine Steege appeared on April 30, 2013 to present and defend the Trustee's Settlement Agreement With Mark Rittmanic, wherein Catherine Steege granted over ten million dollars, $10,000,000.00, of bankruptcy estate assets/income to Mark Rittmanic in exchange for one hundred twenty thousand dollars, $120,000.00, (Bankr. Dkt. 198, 202, 204, 234, 257), despite there being required court appearances one to three times each month. Note that Catherine Steege did not even appear at the hearing to remove Catherine Steege as the bankruptcy trustee, (Bankr. Dkt. 238, 246). Further note that Michael Kelly appeared in court and filed documents in lieu of Catherine Steege, (while Catherine Steege was absent), including representing Catherine Steege at the hearing to remove Catherine Steege as trustee (for over thirteen months when Michael Kelly was NOT authorized by the Court to represent Catherine Steege, as Michael Kelly was not approved in a court order to represent Catherine Steege until October 29, 2013 (Bankr. Dkt. 251).

[3] As indicated in footnote no. 1, Lauren Sylvester Berheide also resigned from Jenner & Block in the midst of this case.

appearing in court in lieu of Catherine Steege, not just as Catherine Steege's attorney/advisor,

but basically doing the work that would normally be expected of the actual assigned bankruptcy

trustee, and which Catherine Steege was the person with the fiduciary responsibility to perform,

well into the fourth year of this case. Whereas it was not until the Pro Se Debtor-Party In Interest

started referring to Catherine Steege as "the absentee trustee" in all of the Pro Se Debtor-Party In

Interest's pleadings and wherein the greed for billable hours by Jenner & Block LLP associates

had become so extreme that they were filing three pleadings to every one of the Pro Se Debtor-

Party In Interest's pleadings including an objection to payment, motion to reconsider and even

threatening to file an appeal of Judge Timothy A. Barnes' order for Jenner & Block LLP to

disburse a $2,000 wild card exemption[4] payment to the Pro Se Debtor-Party In Interest, that on

April 1, 2015, in open court, Judge Timothy A. Barnes finally verbally ordered Landon Raiford

to inform Catherine Steege that she was to appear in court on her own behalf, which at that date

was two years since Catherine Steege had last appeared in court on this case, where Catherine

Steege showed up to personally argue the case to ensure the approval of the Trustee's Settlement

Agreement With Mark Rittmanic, wherein Catherine Steege granted a net value of ten million

dollars, $10,000,000.00, of bankruptcy estate assets and income to Mark Rittmanic in exchange

for Mark Rittmanic's payment of one hundred twenty thousand dollars, $120,000.00, (Bankr.

Dkt. 198, 202, 204, 234, 257).

4.      Katy Gleason appears to be the actual United States Bankruptcy Trustee assigned

to Margaret Ann Johnsson's bankruptcy case. Katy Gleason appears to work for Patrick Layng

of the Office of the U.S. Trustee – Region 11, located at 219 S. Dearborn, Chicago, IL 60604.

Katy Gleason has appeared in court approximately five times over the course of the last four and

---

[4] The wild card exemption is the only exemption that is granted as a matter of right to every debtor in a chapter 7
bankruptcy case, and does not even need to have a specific type of asset to be granted as an exemption.

a half years, (wherein the Pro Se Debtor-Party In Interest has had to appear over one hundred times), most notably appearing on August 27, 2013, when the hearing was held on the Pro Se Debtor-Party In Interest's two-hundred-twenty-six-page Motion To Remove [Catherine Steege as] Trustee (Bankr. Dkt. 238), wherein Katy Gleason made sure to go on the record at the very beginning of the trial (before any part of the hearing had even begun) to state that the U.S. Trustee's Office had reviewed the Pro Se Debtor-Party In Interest's Motion To Remove Trustee, and that the U.S. Trustee's Office "stood firmly behind Catherine Steege" and did not consider Catherine Steege to have done anything wrong. Obviously this was an intentional attempt by Katy Gleason to prejudice the court in favor of Catherine Steege and against the Pro Se Debtor-Party In Interest before the trial/hearing had even begun.

5.      Mark Bernard Rittmanic, ("Mark Rittmanic"), was the estranged husband of the Pro Se Debtor-Party In Interest at the date of the Pro Se Debtor-Party In Interest's chapter 7 bankruptcy petition filing, Septemeber 21, 2011, but was NOT a co-debtor in the bankruptcy filing, as Mark Rittmanic had possession and control of 99% of the parties marital and pre-marital assets and income estimated to have a net value in excess of ten million dollars, $10,000,000.00, (Bankr. Dkt. 198, 202, 204, 234, 257) – which is why a multi-million dollar debtor's surplus was expected in this exceptional chapter 7 bankruptcy case (Bankr. Dkt. 144, 197). Mark Rittmanic was originally[5] the only adversary party to Margaret Ann Johnsson's bankruptcy case no. 11-B-38307.

---

[5] Due to Catherine L. Steege's signing of the Trustee's Settlement Agreement With Mark Rittmanic on April 5, 2013, Catherine L. Steege, the private, outsourced, usually absentee, bankruptcy trustee assigned by Katy Gleason of the Office of the U.S. Bankruptcy Trustee to have the fiduciary responsibility of the bankruptcy trustee on Margaret Ann Johnsson's chapter 7 bankruptcy case, (which by nature of being a chapter 7 bankruptcy case calls for the bankruptcy trustee to take possession of and liquidate all of the assets/income of the bankruptcy estate), has become the only other adversary party to Margaret Ann Johnsson's bankruptcy case, which has put Catherine L. Steege, her law firm, Jenner & Block LLP and even Katy Gleason and the Office of the U.S. Bankruptcy Trustee in an adversary position to Margaret Ann Johnsson's bankruptcy estate creditors and debtor's surplus in this case.

## FACTUAL ALLEGATIONS

6.      On March 1, 2011, when the Pro Se Debtor-Party In Interest was homeless,

unemployed, without a car, was under extreme duress due to Mark Rittmanic's having just

gained a court order giving him temporary sole custody of the Pro Se Debtor-Party In Interest's

minor daughter and not granting any visitation whatsoever to the Pro Se Debtor-Party In Interest,

and while the Pro Se Debtor-Party In Interest was without any legal representation, Mark

Rittmanic came to Divorce Court[6] with both a fifty-thousand-dollar ($50,000.00) cashier's check

made payable to the Pro Se Debtor-Party In Interest and a Marital Settlement Agreement, stating

that he would give the $50,000.00 cashier's check to the Pro Se Debtor-Party In Interest

immediately upon her signing of the Marital Settlement Agreement, and would give her another

$125,807.00 in cashier's checks by March 31, 2011.

7.      The Pro Se Debtor-Party In Interest signed the Marital Settlement Agreement on

March 1, 2011, but Mark Rittmanic did not turn over the cashier's check to the Pro Se Debtor-

Party In Interest, and instead Mark Rittmanic kept the cashier's check and Michael Sabath,

(Mark Rittmanic's divorce attorney, Managing Director at the law firm Berger Schatz), took and

kept the signed Marital Settlement Agreement, despite the Pro Se Debtor-Party In Interest

begging to have either the cashier's check immediately given to her, or to have the Marital

Settlement Agreement immediately destroyed. To date, Mark Rittmanic has never made any of

the payments to the Pro Se Debtor-Party In Interest or to any of the other third-parties that the

Marital Settlement Agreement called for Mark Rittmanic to make. In September, 2011, Mark

Rittmanic re-deposited the $50,000.00 cashier's check that had been made out to the Pro Se

Debtor-Party In Interest into his Charles Schwab account.

---

[6] Divorce Court = Circuit Court of Cook County, Illinois, County Department, Domestic Relations Division.

8.      On September 21, 2011, the Pro Se Debtor-Party In Interest filed her chapter 7

bankruptcy petition, due to Judge Pamela Loza, ("Judge Loza"), of the Circuit Court of Cook

County, Illinois, County Department, Domestic Relations Division, ("Divorce Court"), having

refused to hear any of the Pro Se Debtor-Party In Interest's motions for support, having refused

to enforce Judge Loza's own orders ordering Mark Rittmanic to comply with discovery and turn

over W-2s, K-1s, financial statements and tax returns, having decided to move forward with a

trial on the financial aspects of the parties' dissolution of marriage proceedings despite Mark

Rittmanic's failure to comply with Judge Loza's discovery orders, and having just entered an

order prohibiting the Pro Se Debtor-Party In Interest from presenting any testimony or evidence

at trial regarding the ten-million-dollar fraud, ($10,000,000.00), committed by Mark Rittmanic in

preparation of the Marital Settlement Agreement, and/or about Mark Rittmanic's failures to

comply with even the most basic financial discovery, (including but not limited to Mark

Rittmanic's failures/refusal to provide W-2s, K-1s, tax returns, bank statements, and investment

and retirement account statements).

9.      On November 14, 2012, this Court entered an Order Granting In Part And

Denying In Part Debtor's [Pro Se Debtor-Party In Interest's] Motion For Leave To Conduct

Discovery Pursuant To Rule 2004 against Mark Rittmanic and the parties' marital businesses.

(Bankr. Dkt. 144), which stated in pertinent part, "THE COURT FINDS that, given the Debtor's

unchallenged assertion that estate assets more than sufficient to fully administer the Debtor's

estate exist, the Debtor's interest in residual assets, if any, is sufficient to make the Debtor a

party in interest for the purposes of conducting an examination under Rule 2004 ("Rule 2004")

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

10.     On April 3, 2013, this Court entered an Order Granting Mark Rittmanic's Motion

To Quash [the Pro Se Debtor-Party In Interest's] Rule 2004 Discovery Requests, ("April 3, 2013

Order"), (Bankr. Dkt. 197), stating that the Pro Se Debtor-Party In Interest's Rule 2004

Discovery Requests were duplicative with the Pro Se Debtor-Party In Interest's dissolution of

marriage proceedings and with the Pro Se Debtor-Party In Interest's discovery rights under the

then-pending adversary complaints #13-A-00144 (Bankr. Dkt. 183) and #13-A-00177 (Bankr.

Dkt. 189).

11.     The April 3, 2013 Order (Bankr. Dkt. 197), denied Mark Rittmanic's motion-to-

quash efforts which had sought to revoke the Pro Se Debtor-Party In Interest's party in interest

standing, referencing but specifically not citing *Cult Awareness Network, Inc. v. Martino (In re*

*Cult Awareness Network, Inc.),* 151 F.3d 605, 607 (7th Cir. 1998) and stating in pertinent part,

"To have standing to object to a bankruptcy order, a person must have a pecuniary interest in the

outcome of the bankruptcy proceedings . . ." and then referencing *Andreuccetti,* 975 F.2d at 417

and *Goodwin's Discount Furniture,* 16 B.R. at 887 stating in pertinent part, "A proposed action

that affects a debtor's potential surplus is unquestionably an example of such an effect" that is a

"classic example of standing."

12.     On April 5, 2013, two days after the entry of the April 3, 2013 Order (Bankr. Dkt.

197) which re-confirmed the Pro Se Debtor-Party In Interest's party-in-interest standing and

which re-confirmed the Pro Se Debtor-Party In Interest's rights to conduct discovery pursuant to

the two then-pending adversary complaints (Bankr. Dkt. 183 and Bankr. Dkt. 189), against Mark

Rittmanic and the parties' marital businesses, Mark Rittmanic and Catherine Steege signed the

Trustee's Settlement Agreement With Mark Rittmanic (hereinafter referred to as "BK Settlement

Agreement") (Bankr. Dkt. 198).

13.     On April 26, 2013, Catherine Steege and Michael Kelly issued a letter stating that

Catherine Steege had "waived formal discovery" and instead "relied upon interviews with Mark

Rittmanic," (Mark Rittmanic's fraudulent verbal representations), and Mark Rittmanic's self-

prepared, one-page document entitled, March 27, 2013 Balance Sheet, (hereinafter referred to as

"Mark Rittmanic's One-Page B.S."), and two conversations Catherine Steege alleged that she

had with realtors regarding the value of the parties' five-bedroom, plus coach-house, marital

residence on nearly one-acre of land in Winnetka, Illinois, to arrive at the BK Settlement

Agreement price of $120,000.00, for which she granted to Mark Rittmanic all of the bankruptcy

estate assets and income **in Mark Rittmanic's possession**, estimated by the Pro Se Debtor-Party

In Interest to be worth a net value in excess of ten million dollars, $10,000,000.00, but

fraudulently represented by Mark Rittmanic to be worth a net value of only $117,505.50, as

documented in Mark Rittmanic's One-Page B.S..

14.     On August 7, 2013, Judge Loza entered an order entitled, Order, which declared

the Marital Settlement Agreement signed on March 1, 2011 to be "valid," "enforceable" and "not

unconscionable."

15.     On October 21, 2013, Judge Loza signed the final order in the parties' dissolution

of marriage proceedings entitled, Supplemental Judgment For Dissolution Of Marriage, which

Supplemental Judgment For Dissolution Of Marriage outlined a distribution Margaret Ann

Johnsson's and Mark Rittmanic's marital and non-marital assets and debts, without considering

or conducting any hearing, whatsoever, and without determining in any manner, which assets

and debts were marital and which assets and debts were pre-marital, post-marital and/or non-

marital for any other reason, and which distribution failed to consider or outline any listing,

definition and/or distribution of the any of the income earned and/or cash and asset withdrawals

withdrawn from the parties' marital businesses and/or other liquidations of assets by either of the

parties – some of which income and liquidated assets would have been property of the Pro Se

Debtor-Party In Interest's bankruptcy estate, and some of which, (such as retirement account

funds), would NOT have been property of the Pro Se Debtor-Party In Interest's bankruptcy

estate.

16.     The original draft of Judge Loza's Supplemental Judgment For Dissolution Of

Marriage, (which had been prepared by Michael Sabath, as indicated on its page 20), had

included a page 16 which did indeed refer to the $780,000.00 tax loss carryforward, which page

16 had been viewed by the Pro Se Debtor-Party In Interest, but which she does not have a copy

of. At the end of the October 21, 2013 court proceedings, Michael Sabath volunteered, as an

officer of the court, to carry the final Supplemental Judgment For Dissolution Of Marriage[7]

upstairs to the Clerk of the Circuit Court's office for immediate entry on the docket, to which

Judge Loza agreed. Therefore not only did Judge Loza rely upon Michael Sabath to file all

twenty pages of the Supplemental Judgment For Dissolution of Marriage with the Clerk of the

Circuit Court of Cook County, Illinois, but the Pro Se Debtor-Party In Interest was also forced to

rely upon Michael Sabath's filing of the document. (Refer to related Adversary Complaint 16-A-

00235.)

17.     On his journey between Judge Loza's courtroom and the clerk of the circuit

court's office, both in the Daley Center at 50 W. Washington, Chicago, IL, Michael Sabath

intentionally and fraudulently removed page 16 from the Supplemental Judgment For

Dissolution Of Marriage, so as to commit fraud against the Pro Se Debtor-Party In Interest and

so as to commit fraud on the state circuit court, on the state appellate court, on the state supreme

---

[7] Which final Supplemental Judgment For Dissolution Of Marriage had numerous handwritten changes made by
Michael Sabath in open court on October 21, 2013.

court, on the federal U.S. Bankruptcy Court and on the U.S. District Court, so that the final file

copy of the Supplemental Judgment For Dissolution Of Marriage, and the resulting Record On

Appeal files, which are currently located at the Supreme Court of the United States, and the final

copy which is in the possession of the U.S. Bankruptcy Court, excludes any and all reference to

the $780,000.00 tax loss carryforward that Mark Rittmanic intentionally and fraudulently failed

to disclose to Catherine Steege when negotiating the BK Settlement Agreement. (Refer to related

Adversary Complaint 16-A-00235.)

18.    On April 7, 2016, the Pro Se Debtor-Party In Interest filed her Adversary

Complaint No. 16-A-00235, which details the fraudulent acts committed by Mark Rittmanic and

Michael Sabath (referenced in paragraphs 16 and 17, above), with respect to the tax loss

carryforward and tax loss carryback benefits that were originally articulated on the original page

16 of the October 21, 2013 Supplemental Judgment For Dissolution Of Marriage and in the

Marital Settlement Agreement signed on March 1, 2011, in which Adversary Complaint no. 16-

A-00235 the Pro Se Debtor-Party In Interest outlined that there are potential tax benefits ranging

from three hundred fifty-seven thousand dollars, $357,000.00, to over one million dollars,

$1,000,000.00, that are potentially intangible property of the Pro Se Debtor-Party In Interest's

bankruptcy estate, and in which Adversary Complaint #16-A-00235 the Pro Se Debtor-Party In

Interest articulated that the first step in determining whether or not these potential intangible

property items still existed and could possibly be claimed on behalf of the Pro Se Debtor-Party In

Interest's bankruptcy estate was to obtain the tax returns of Mark Rittmanic for the years 2009

through and including 2015.

19.    In addition to the extreme and fraudulent prejudice granted by Catherine Steege to

Mark Rittmanic, with complete disregard to Catherine Steege's fiduciary responsibilities to the

Pro Se Debtor-Party In Interest's bankruptcy estate creditors and to the preservation of the Pro

Se Debtor-Party In Interest's debtor's surplus evidenced in the fraudulent BK Settlement

Agreement (Bankr. Dkt. 198, 202, 204, 234, 257), Catherine Steege has consistently, throughout

these four and a half years of bankruptcy case proceedings gone out of her way to draft

voluminous responses to argue against any and all collection and/or liquidation of bankruptcy

estate assets, starting with the Certificate Of Notice – Order Of Discharge filed by Catherine

Steege on December 20, 2011, which wrongfully claimed this case to be a "Chapter 7 No Asset –

Auto [only]" case. (Bankr. Dkt. 42).

20.     Catherine Steege's intentional and willful refusal to collect and liquidate any of

the Pro Se Debtor-Party In Interest's bankruptcy estate assets, while continuing to maximize the

amount of billable hours incurred on behalf of her law firm, Jenner & Block LLP to draft lengthy

arguments/responses arguing against the collection/liquidation of bankruptcy estate assets as

evidenced in numerous pleadings filed by Catherine Steege's and her eight billable subordinates

from Jenner & Block LLP on this case, (including Bankr. Dkt. 56, 95, 367, 389), which

responses/ refusals to collect and liquidate bankruptcy estate assets often resulted in the Pro Se

Debtor-Party In Interest being reprimanded by Judge Timothy A. Barnes for attempting to do the

trustee's/Catherine Steege's job (Bankr. Dkt. 114, 128, 129, 143, 269, 271, 356)

21.     Catherine Steege's intentional, willful and contumacious efforts to give an

extremely unfair prejudice to Mark Rittmanic, including allowing Mark Rittmanic to

draw/spend/dilute whatever assets/income he wanted from property that rightfully belonged to

the Pro Se Debtor-Party In Interest's bankruptcy estate was also evidenced in numerous

instances where Catherine Steege failed to act and failed to carry out her fiduciary

responsibilities to do anything, whatsoever, to protect the interests of the bankruptcy estate

creditors and of the Pro Se Debtor-Party In Interest's debtor's surplus, including the following:

a. Bankr. Dkt. 76 - Response stating that Catherine Steege had no objection to
Mark Rittmanic's Second Motion For Relief From Stay in which Mark
Rittmanic sought to enforce in Divorce Court the Marital Settlement
Agreement, which the Pro Se Debtor-Party In Interest had already
documented gave away over ten million dollars, $10,000,000.00, in marital
and pre-marital property to Mark Rittmanic in exchange for only three
hundred thirty-four thousand, two hundred sixty-one dollars, $334,261.00.

b. Failure to take any action, whatsoever, with respect to the Pro Se Debtor-
Party In Interest's documentation (Bankr. Dkt. 97, 99, 101, 121, 122) of
Mark Rittmanic's concealing bank accounts and fraudulently use of
combination accrual basis/cash basis financial statements prepared by Mark
Rittmanic (not by the business' outside accountant or CFO) to grossly
understate the value of the parties' marital busieness, Forte CEO.

c. Failure to take any action or respond in any manner, whatsoever, with respect
to the Pro Se Debtor-Party In Interest's documentation that Mark Rittmanic
was rapidly depleting bankruptcy estate assets by taking luxury vacations to
Europe, purchasing jewelry and other luxury items (Bankr. Dkt. 108, 126)

d. Failure to take any action, whatsoever, with respect the Pro Se Debtor-Party
In Interest's documentation (Bankr. Dkt. 123, 127, 130, 190, 191, 192,
Adversary Complaint #13-00180[8]) of **fraudulent documents that had been**

---

[8] **Note that Adversary Complaint #13-00180 no longer even shows up in Pacer.gov as being associated with
Margaret Ann Johnsson which documented in detail the fraudulent shareholder documents manufactured by**

**specifically manufactured by Mark Rittmanic** wherein Mark Rittmanic's **to understate the percentage of ownership Mark Rittmanic understate the actual ownership interest Mark Rittmanic held in the parties' marital business**, Forte CEO Services, LLC – **and in this matter, failure to appear in court and/or to even send any of her billable subordinates from Jenner & Block LLP to court on the hearing date of October 9, 2012, so that there was no one representing the bankruptcy trustee, or the bankruptcy estate creditors when the hearing on the fraud committed by Mark Rittmanic was conducted,** which hearing resulted in Mark Rittmanic's bankruptcy case attorney, Scott Schreiber of the law firm Stahl Cowen Crowley Addis LLP, withdrawing Mark Rittmanic's motion at the last minute – rather than have a ruling go on the record regarding Mark Rittmanic's manufacture of fraudulent shareholder documents (Bankr. Dkt. 127, 130), and then also failing to take any action, whatsoever, to support the Pro Se Debtor-Party In Interest's pleadings to stop Mark Rittmanic and his CFO from making K-1 distributions to themselves based upon the fraudulent shareholder documents (Bankr. Dkt. 190, 191, 192 and Adversary Complaint No. 13-00180[9]).

---

**Mark Rittmanic to intentionally and fraudulently understate the ownership percentage he held in the parties' marital business Forte CEO Services LLC,** and/or with Bankruptcy Case No. 11-B-38307. Note also that there are three separate Margaret Ann Johnsson persons that have been set up in Pacer.gov, all of which are related to Bankruptcy Case No. 11-B-38307, but only one of which persons is actually associated with Margaret Ann Johnsson's actual social security number.

[9] **Note that Adversary Complaint #13-00180 no longer even shows up in Pacer.gov as being associated with Margaret Ann Johnsson which documented in detail the fraudulent shareholder documents manufactured by Mark Rittmanic to intentionally and fraudulently understate the ownership percentage he held in the parties' marital business Forte CEO Services LLC,** and/or with Bankruptcy Case No. 11-B-38307. Note also that there are

e.  Failure to take any action, whatsoever, with respect to the Pro Se Debtor-Party In Interest pleadings, (Bankr. Dkt. 131, 132, 133, 135, 141), to stop Mark Rittmanic's depletion of bankruptcy estate assets/income for his own Divorce Court legal fees (despite Catherine Steege's filing a voluminous response to deny any use of bankruptcy estate assets/income for the Pro Se Debtor-Party In Interest's Divorce Court legal fees, in support of the Pro Se Debtor-Party In Interest.

f.  Failure to take any action, whatsoever, to support the Pro Se Debtor-Party In Interest's pleadings, (Bankr. Dkt. 134, 137, 144, 146, 147, 172, 174, 176, 178, 183, 187, 189, 190, Adversary Complaint 13-00144, Adversary Complaint 13-00177 and Adversary Complaint 13-00180), to conduct discovery against Mark Rittmanic and the parties' marital businesses in Mark Rittmanic's control and then, instead, "waiving any formal discovery" against Mark Rittmanic and signing the fraudulent BK Settlement with Mark Rittmanic, two days after the Pro Se Debtor-Party In Interest's rights to conduct discovery against Mark Rittmanic under adversary complaints 13-00144 and 13-00177 was re-confirmed by the order of Timothy A. Barnes entered on April 3, 2013 (Bankr. Dkt. 197). **It should be noted that Timothy A. Barnes order of April 3, 2013 (Bankr. Dkt. 197) also excluded any and all mention of Adversary Complaint #13-00180[10] which fully documented the fraudulent manufacture of shareholder documents by Mark Bernard Rittmanic.**

---

three separate Margaret Ann Johnsson persons that have been set up in Pacer.gov, all of which are related to Margaret Ann Johnsson's actual social security number.

[10] Same as footnote #9.

g.  Failure to take any action, whatsoever, in support of the Pro Se Debtor-Party In Interest's pleadings (Bankr. Dkt. 207, 208, 209, 216) to take possession of and liquidate items which Mark Rittmanic's attorney, Scott Schreiber, and/or Michael Kelly, (Catherine Steege's billable subordinate from Jenner & Block LLP), had stated were NOT included in the BK Settlement Agreement, which resulted in the Pro Se Debtor-Party In Interest's pleadings being denied as motions that should have been brought forward by the trustee/Catherine Steege and not by the Pro Se Debtor-Party In Interest, (Bankr. Dkt. 214, 215, 236, 257, 350, 351).

h.  Refusal to take any action, whatsoever, to obtain compensation on behalf of the Pro Se Debtor-Party In Interest's bankruptcy estate for intangible assets granted to Mark Rittmanic in the Supplemental Judgment For Dissolution of Marriage entered by Judge Loza on October 21, 2013 (See Adversary Complaint #16-A-00235).

22.     In addition to the inconceivable granting of ten million dollars worth of bankruptcy assets and income in the fraudulent BK Settlement Agreement, Catherine Steege and Landon Raiford continued their assault on the bankruptcy estate of the Pro Se Debtor-Party In Interest by filing their retaliatory, baseless Adversary Complaint #14-A-00106[11]. By wrongfully and harmfully accusing the Pro Se Debtor-Party of Interest for fraud, (which the Pro Se Debtor-Party In Interest did not commit), wherein Catherine Steege and Landon Raiford opened the floodgates for another two years worth of billing by Jenner & Block LLP, wherein at the one-year mark, May 1, 2015, they had already billed in excess of sixty-thousand dollars, $60,000.00,

---

[11] The court docket for Adversary Complaint #14-A-00106 exceeds 100 docket items, so the relevant docket references are not listed here in this injunctive Adversary Complaint.

and whereas as of the filing of this Adversary Complaint 16-A-00235, they continued billing for

another eleven months, causing estimated additional charges to the Pro Se Debtor-Party In

Interest's bankruptcy estate in excess of one hundred thousand dollars, $100,000.00, as Catherine

Steege, Landon Raiford and their billable subordinates at Jenner & Block LLP prepared for the

six-day long trial, (February 2, 2016 and March 7 – 11, 2016), wherein they demanded discovery

documents in excess of five years from the Pro Se Debtor-Party In Interest's financial

institutions, interviewed more than ten witnesses (but then only called only three witnesses at

trial), conducted a 7 ½ hour deposition of the Pro Se Debtor-Party In Interest, blocked all of the

Pro Se Debtor-Party In Interest's pleadings to obtain/conduct meaningful discovery that would

actually resolve whether or not the disputed items were indeed property belonging to the Pro Se

Debtor-Party In Interest's bankruptcy estate.

     23.     Adding insult to injury, the retaliatory, baseless Adversary Complaint #14-A-

00106 filed by Catherine Steege and Landon Raiford didn't even seek to recover any assets or

income on behalf of the Pro Se Debtor-Party In Interest's bankruptcy estate, but instead sought

solely to revoke the Pro Se Debtor-Party In Interest's bankruptcy discharge. Were they

successful in their adversary complaint proceeding, their actions would allow Catherine Steege

and Landon Raiford to keep 100% of the money they had already received from the Pro Se

Debtor-Party In Interest and from Mark Rittmanic, in excess of one hundred thirty thousand

dollars, $130,000.00, and pay ZERO dollars to the Pro Se Debtor-Party In Interest's bankruptcy

estate creditors. Decision on the matter following the conclusion of the trial on March 11, 2016

has not yet been entered by Judge Timothy A. Barnes. However, it became apparent at the trial

that the Pro Se Debtor-Party In Interest's bankruptcy estate never had a valid claim to the real

estate that is the Pro Se Debtor-Party In Interest's brother's house, as it was held in a valid land

trust – which fact was known all along by Catherine Steege and Landon Raiford – yet they still filed their wrongful and harmful allegations that the Pro Se Debtor-Party In Interest had committed fraud by not listing the Pro Se Debtor-Party In Interest's brother's house on her Schedule A – Real Property. The only other matter raised by the retaliatory adversary complaint filed by Catherine Steege and Landon Raiford related to monies the Pro Se Debtor-Party In Interest received (but which actually should have been received by the Pro Se Debtor-Party In Interest's brother) subsequent to her uncle's death. And, again, Catherine Steege and Landon Raiford have fought against all of the Pro Se Debtor-Party In Interest's efforts to obtain bank statements and other documents to track down the actual final will of the uncle in order to definitively determine which monies (if any) are actually property of the Pro Se Debtor-Party In Interest's bankruptcy estate.

24.     Based upon all the information that the Pro Se Debtor-Party In Interest learned during the trial on the baseless, wrongful and harmful Adversary Complaint #14-A-00106 (by which Catherine Steege and Landon Raiford wrongfully and harmfully tried to frame the Pro Se Debtor-Party In Interest for fraud in order to draw attention away from the ten-million dollar, $10,000,000.00, fraud committed by Catherine Steege and Mark Rittmanic), all of which information had already been known by Catherine Steege and Landon Raiford, as the evidence all came from their witnesses and their exhibits, the Pro Se Debtor-Party In Interest has now filed two adversary complaints attempting to resolve the matters on behalf of the Pro Se Debtor-Party In Interest's bankruptcy estate, namely Adversary Complaint #16-A-00215 and #16-A-00216.

## COUNT I – PLEA FOR INJUNCTIVE RELIEF RELATED TO CORRUPT/
## CONTAMINATED EMAILS FROM LANDON RAIFORD/JENNER & BLOCK LLP

25.     On the afternoon of April 8, 2016, Landon Raiford sent an email to the Pro Se

Debtor-Party In Interest, which email was contaminated/corrupted and the Pro Se Debtor-Party

In Interest's security software would not allow the Pro Se Debtor-Party In Interest to open

Landon Raiford's email. The Pro Se Debtor-Party In Interest sent an email to Landon Raiford

indicating that she saw an email from him had arrived in her email inbox but that the email was

contaminated/corrupted and that the Pro Se Debtor-Party In Interest's security software would

not allow her to open Landon Raiford's email.

26.     It should be noted that this is a frequent occurrence – Landon Raiford has

repeatedly and intentionally sent contaminated/corrupted emails to the Pro Se Debtor-Party In

Interest in recent months. Then, when the Pro Se Debtor-Party In Interest sends a response email

to Landon Raiford informing him that his email is contaminated and that the Pro Se Debtor-Party

In Interest's security software will not allow the email to be opened. Then Landon Raiford sends

a new email to the Pro Se Debtor-Party In Interest that is not contaminated and that the Pro Se

Debtor-Party In Interest is able to open.

27.     **WHEREFORE, the first injunctive item of relief sought by the Pro Se**

**Debtor-Party In Interest is that Landon Raiford cease his sending of contaminated emails**

**to the Pro Se Debtor-Party In Interest**. Obviously Landon Raiford knows what he is doing that

results in the first email being a contaminated one, and Landon Raiford knows how to send

uncontaminated emails. And, **WHEREAS the Pro Se Debtor-Party In Interest reserves the**

**right to file for damages against Landon Raiford, Catherine Steege and/or Jenner & Block**

**LLP, should she find that there is some latent virus that has attached to her computer**

20

through the receipt of these emails from Landon Raiford and/or any other employee of Jenner &

Block, LLP.

## COUNT II – PLEA FOR INJUNCTIVE RELIEF RELATED TO NOTICE/DEMANDS OF CATHERINE STEEGE/LANDON RAIFORD/JENNER & BLOCK LLP

28.     Throughout this bankruptcy case, the Pro Se Debtor-Party In Interest has had

intermittent email service and internet access, as she has often had extreme difficulty paying her

regular monthly bills due to the interruptions in her employment and the extreme costs she has

had to bear with respect to the her single-handed, Pro Se, non-attorney defense against the

massive forces of the law firms Jenner & Block LLP, Stahl Cowen Crowley Addis LLP, Clark

Hill PLC and Berger Schatz, all of whom have been working to maximize the amount of the Pro

Se Debtor-Party In Interest's bankruptcy estate that is transferred to Mark Rittmanic and to

maximize the amount of billable revenue to their respective law firms.

29.     Whereas, Catherine Steege and Landon Raiford in particular have been extremely

abusive with respect to their use of email/internet communications with the Pro Se Debtor-Party

In Interest, sending demand emails to the Pro Se Debtor-Party In Interest when they knew she

was in the hospital (December, 2012), when they knew she was under heavy narcotics and not

able to get to a computer (January, 2013), when they knew she was without internet service and

was being evicted from her rental residence due to inability to make rent payments, (May

through August, 2015), and now have started with new 'demand' emails, (after the Pro Se

Debtor-Party In Interest informed the Court during the March 7 – 11, 2016 trial that her internet

service had been disconnected, her gas and electric services were scheduled for disconnection,

her rent was in arrears and that even her cellphone service was about to be cutoff due to the Pro

Se Debtor-Party In Interest's inability to make payments, given all the court costs the Pro Se

Debtor-Party In Interest had been forced to incur related to the trial on Catherine Steege's

/Landon Raiford's baseless and retaliatory Adversary Complaint #14-A-00106), which seek to violate the proper timeframe for discovery with respect to the Pro Se Debtor-Party In Interest's Adversary Complaint #16-A-00235 related to the intangible rights the Pro Se Debtor-Party In Interest seeks to obtain access to on behalf of the Pro Se Debtor-Party In Interest's bankruptcy estate creditors and debtor's surplus.

30.     WHEREAS the Pro Se Debtor-Party In Interest is again in arrears on the bill for her internet service and may potentially risk having it cutoff altogether, without the possibility of having it reinstated, according to the last communication from her internet service provider, if the Pro Se Debtor is not able to immediately come up with the $162.91 owed to the internet provider, and WHEREAS the Pro Se Debtor-Party In Interest has NEVER authorized the trustee, (or any of the parties purporting to act in a fiduciary role with respect to the bankruptcy estate of the Pro Se Debtor-Party In Interest), the Court, Catherine Steege, Landon Raiford, Katy Gleason, and/or any other party in this matter to use email service as an appropriate means of communication with the Pro Se Debtor-Party In Interest for anything other than a courtesy advisement of a communication that has been properly sent to the Pro Se Debtor-Party In Interest at her mailing address.

31.     **WHEREFORE, the second injunctive item of relief sought by the Pro Se Debtor-Party In Interest is that Catherine Steege, Landon Raiford, Katy Gleason and/or any other party in this matter be barred from communicating with the Pro Se Debtor-Party In Interest via email and that any and all such communications with the Pro Se Debtor-Party In Interest not only be mailed to the Pro Se Debtor-Party In Interest, but that proof of service also be obtained by the party sending the communications.**

**COUNT III – PLEA FOR INJUNCTIVE RELIEF RELATED TO CATHERINE
STEEGE'S AND LANDON RAIFORD'S DEMAND FOR ANY INFORMATION/
DISCOVERY WITH RESPECT TO THE PRO SE DEBTOR-PARTY IN INTEREST'S
ADVERSARY COMPLAINT #16-A-00235**

32.     WHEREAS in bad faith, and in an intentionally harmful and fraudulent BK

Settlement Agreement, Catherine Steege went out of her way to grant to Mark Rittmanic

bankruptcy estate assets and income estimated by the Pro Se Debtor-Party In Interest to be worth

a net value in excess of ten million dollars, $10,000,000.00, (but fraudulently represented by

Mark Rittmanic to be worth a net value of only $117,505.50, as documented in Mark Rittmanic's

self-prepared, one-page document entitled, March 27, 2013 Balance Sheet, ("Mark Rittmanic's

One-Page B.S.")), for a sum of money, ($120,000.00), which 'settlement amount' was not only

unconscionable, but was intentionally lower than the amount owed to the Pro Se Debtor-Party In

Interest's creditors, ($149,644.00), attempting thereby to remove the Pro Se Debtor-Party In

Interest's standing as a party in interest, so as to prevent the Pro Se Debtor-Party In Interest from

initiating any further attempts at conducting discovery against Mark Rittmanic.

33.     Catherine Steege's BK Settlement Agreement stated in the last sentence of its

paragraph B of the Recitals section as follows: "Upon the filing of her bankruptcy petition, all of

the Debtor's rights to property of the **marital estate** became property of the Bankruptcy Estate

pursuant to 11 U.S.C. § 541." (Bankr. Dkt. 198 page 12 of 16, Emphasis added.) However,

Catherine Steege's BK Settlement Agreement intentionally and confusingly alluded to the

Divorce Court/state law term, **'marital estate,'** without actually ever attempting to determine

what property and/or other benefits were or were not a part of the Pro Se Debtor-Party In

Interest's marital estate, and which determination of what was or was not a part of Margaret Ann

Johnsson's (the Pro Se Debtor-Party In Interest) and Mark Rittmanic's marital estate has never

been heard or considered by either the Divorce Court or the U.S. Bankruptcy Court or by any
other court, whatsoever.

34.    The intentionally confusing reference to a 'marital estate' was made by Catherine
Steege's/the BK Settlement Agreement's establishment of a custom-made definition to be used
in the BK Settlement Agreement laid out in paragraph D of the Recitals section which stated as
follows: "The Trustee [Catherine Steege] asserts that Rittmanic is holding property of the marital
estate in which the Bankruptcy Estate holds an interest (the "Trustee's Marital Estate Claims")
and that Rittmanic is obligated to turnover such property to the Bankruptcy Estate."

35.    It is important to note that not only was the term 'marital estate' wrongfully,
harmfully and intentionally left undefined by Catherine Steege in her BK Settlement Agreement,
but that Catherine Steege's definition of the new, custom-made term 'Trustee's Marital Estate
Claims' appears to not include intangible property as the definition (as recited verbatim in
paragraph 34 above), only refers to property that "Rittmanic is **holding** [the] property" that
"Rittmanic is obligated to **turnover**" (Emphasis added), which use of the verbs "holding" and
"turnover" allude to physical property, not to intangible property.

36.    Whereas, tax benefits such as tax loss carryforward credits and tax loss carryback
credits are NOT physical property. By definition such tax credits are intangible rights to a
potential monetary benefit in the future that are contingent upon other items such as future
income earned and tax returns being filed. Therefore while such items as **tax benefits** are indeed
benefits that could potentially accrue to a party's bankruptcy estate, they **are not, by definition,
actually physical property, that can be held by a party or turned over** to a bankruptcy trustee
or to anyone else.

37.     Catherine Steege stated in her letter of April 26, 2013, that she had "waived

formal discovery" and instead "relied upon interviews with Mark Rittmanic," (Mark Rittmanic's

fraudulent verbal representations), Mark Rittmanic's One-Page B.S. (which was also

intentionally fraudulent) and two conversations Catherine Steege alleged that she had with

realtors regarding the value of the parties' five-bedroom, plus coach-house, marital residence on

nearly one-acre of land in Winnetka, Illinois, to arrive at the BK Settlement Agreement price of

$120,000.00, for which she granted to Mark Rittmanic all of the bankruptcy estate assets and

income in his possession and/or control.

38.     WHEREAS, the BK Settlement Agreement (Bankr. Dkt. 198) does NOT waive

the right to discovery against Mark Rittmanic nor against the parties' marital businesses, and in

fact, is completely silent about the matter of discovery. WHEREAS, the Pro Se Debtor-Party In

Interest believes and relies upon Catherine Steege's statements in her letter of April 26, 2013 that

Catherine Steege has entered into some type of an agreement wherein Catherine Steege has

personally agreed to not conduct discovery against Mark Rittmanic. However, there is no

document or order on file in any of these bankruptcy case docket items for the main bankruptcy

case and for all of the related adversary complaint and U.S. District Court cases, (of which there

are a total of 17 cases directly related to this bankruptcy case no. 11-B-38307, prior to the filing

of this injunctive Adversary Complaint), wherein discovery against Mark Rittmanic has been

waived by or on behalf of the Pro Se Debtor-Party In Interest, by or on behalf of any of the Pro

Se Debtor-Party In Interest's bankruptcy estate creditors, and/or by or on behalf of the Pro Se

Debtor-Party In Interest's debtor's surplus.

39.     Furthermore, the Pro Se Debtor-Party In Interest is in possession of copies of

several instances of email correspondence between Catherine Steege and Michael Kelly, wherein

they were giving preferential treatment and providing information to Mark Rittmanic and

Michael Sabath, (who are the two defendants in the Pro Se Debtor-Party In Interest's Adversary

Complaint #16-A-00235), that they were not providing to the Pro Se Debtor-Party In Interest –

which information wrongfully and harmfully prejudiced the Divorce Court Judge Pamela Loza

against the Pro Se Debtor-Party In Interest.

40.    WHEREAS, the Pro Se Debtor-Party In Interest specifically outlined in her

Adversary Complaint #16-A-00235 that the first step in resolving whether or not there are any

intangible benefits due to tax loss carryforward and/or tax loss carryback, (related to the joint

2003 and/or 2008 tax returns of Margaret Ann Johnsson and Mark Bernard Rittmanic), that may

be due to the Pro Se Debtor-Party In Interest's bankruptcy estate is to obtain the 2009 through

2015 tax returns of Mark Bernard Rittmanic to determine to what extent the tax benefits may

have already been used/claimed by Mark Rittmanic, as the tax benefits can not be used/claimed

more than once.

41.    WHEREAS, Landon Raiford sent an email to the Pro Se Debtor-Party In Interest

on April 8, 2016 demanding the Pro Se Debtor-Party In Interest immediately send to Catherine

Steege some of the tax returns and accounting records that directly relate to the litigation of the

Pro Se Debtor-Party In Interest's Adversary Complaint #16-A-00235 against Mark Bernard

Rittmanic and Michael Sabath.

42.    WHEREAS over the past four and a half years in this case, Catherine Steege has

repeatedly and harmfully conducted side conversations, shared documents, (including

information related to the mortgage on the parties' marital residence), and shared other improper

prejudicial information, to which Catherine Steege has completely excluded the Pro Se Debtor-

Party In Interest from seeing/finding out the details of, despite the Pro Se Debtor-Party In

Interest's repeated verbal and written pleas to obtain the information and other prejudicial

information, as Catherine Steege has wrongfully and harmfully claimed that such

discussions/sharing of documents and other communications between Catherine Steege and

Mark Rittmanic and Michael Sabath to be 'protected information' and/or duplicative with the

Pro Se Debtor-Party In Interest's discovery efforts in state court and/or in pending adversary

proceedings.

43.    WHEREAS Catherine Steege has wrongfully and harmfully, in the BK Settlement

Agreement she entered into with Mark Rittmanic, personally given up rights that would normally

not be given up by any reasonable party to a business contract, and which fortunately, Catherine

Steege had no right to, and therefore DID NOT and could not, give up on behalf of the Pro Se

Debtor-Party In Interest, the Pro Se Debtor-Party In Interest's bankruptcy estate, the Pro Se

Debtor-Party In Interest's bankruptcy estate creditors nor the Pro Se Debtor-Party In Interest's

debtor's surplus, and which rights completely cripple the ability of the bankruptcy trustee to

carry out the fiduciary responsibilities with respect to the protection and maximization of the

value of the Pro Se Debtor-Party In Interest's bankruptcy estate, including:

> a. Deeming that the ambiguity in the BK Settlement Agreement is not the fault
>
> of anyone and that no one can be held accountable for its intentionally and
>
> contumaciously ambiguous content, terms and agreements;
>
> b. Agreeing that if Mark Rittmanic was found to misrepresented facts (such as
>
> the value of the assets he was gaining or concealing intangible or other assets
>
> from Catherine Steege, Michael Kelly or any other person acting as the
>
> trustee on behalf of the Pro Se Debtor-Party In Interest's bankruptcy estate)
>
> that Catherine Steege, Michael Kelly and/or anyone else claiming to be

serving in the fiduciary role of the bankruptcy trustee in this case, would
NOT be entitled to set aside the BK Settlement Agreement regardless of the
size, magnitude or fraudulent intent of Mark Rittmanic in making the
misrepresentation and/or omission of facts;

c.   Agreeing that Catherine Steege, Michael Kelly and/or any other person
claiming to act in the fiduciary role of the bankruptcy trustee related to the
Pro Se Debtor-Party In Interest's bankruptcy estate could not oppose any
motion filed by Mark Rittmanic with respect to his dissolution of marriage
proceedings with Margaret Ann Johnsson, the Pro Se Debtor-Party In
Interest.

44.   **WHEREFORE, the third injunctive item of relief sought by the Pro Se
Debtor-Party In Interest is that Catherine Steege, Landon Raiford, Katy Gleason and/or
any other party in this matter purporting to be acting in a fiduciary role as a trustee on
behalf of the Pro Se Debtor-Party In Interest's bankruptcy estate, bankruptcy estate
creditors and/or Pro Se Debtor-Party In Interest's debtor's surplus be barred from
requesting any information from the Pro Se Debtor-Party In Interest or from Mark
Rittmanic, Michael Sabath and/or from any other party related to the Pro Se Debtor-Party
In Interest's Adversary Complaint #16-A-00235 in advance of any such information being
introduced and disclosed to this Honorable Court.**

**COUNT IV – PLEA FOR INJUNCTIVE RELIEF TO REMOVE CATHERINE STEEGE, LANDON RAIFORD AND/OR ANYONE FROM JENNER & BLOCK FROM SERVING IN THE FIDUCIARY ROLE OF THE BANKRUPTCY TRUSTEE ON THE PRO SE DEBTOR-PARTY IN INTEREST'S BANKRUPTCY CASE #11-B-38307, AND IN ALL RELATED CASES CURRENTLY CLOSED AND/OR PENDING BEFORE THE U.S. BANKRUPTCY COURT, THE U.S. DISTRICT COURT AND/OR THE SUPREME COURT OF THE UNITED STATES**

45.     In the transcript from the April 1, 2015 court hearing, on Catherine Steege's/Landon Raiford's completely unjustified 80-page motion to reconsider (Bankr. Dkt. 322) the court's order of March 17, 2015 which ordered the trustee (Catherine Steege and Landon Raiford) to disburse the $2,000 Wild Card[12] exemption, the Honorable Timothy A. Barnes summarized the completely irrational, harmful and adversarial stance Catherine Steege and her billable subordinates from Jenner & Block LLP have taken towards the Pro Se Debtor-Party In Interest, where the Honorable Timothy A. Barnes stated as follows:

> "All right. I've heard enough. Here is what is most telling about this is that the trustee argues in asking for reconsideration over a $2,000 ruling over a debtor who is unquestionably destitute as a result of this case, that it is [in] the interest of justice that this Court grant this request [disbursement of $2,000 wild card exemption].
>
> Frankly, I do believe that injustices have been done in this case . . . I believe that the trustee is not on the side of right. I think the trustee – this is one of those motions, quite frankly, that Mr. Raiford, it's signed by Ms. Steege, and I would expect Ms. Steege to come in and argue it because I would expect you in your obligation as a counsel and an officer of this Court to step back and say I'm not doing it. All right? I understand that you can, and I understand you may feel you have an obligation to do it [argue Ms. Steege's motions in court due to Ms.

---

[12] This is basically the only exemption that can't even be objected to, as it relates to any and all property of the bankruptcy estate and is basically included in the bankruptcy code to ensure the debtor is not left penniless by filing for bankruptcy protection. Therefore Catherine Steege did not initially object to the wild card exemption within the deadline outlined in U.S. Bankruptcy code, but only objected once the Pro Se Debtor-Party In Interest sought disbursement of the exemption monies, in retaliation for the Pro Se Debtor-Party In Interest having filed motions to have the trustee (Catherine Steege) removed from the case, (Bankr. Dkt. 238), and having filed her appeal documenting the $10,000,000.00 fraud committed by Mark Rittmanic and assisted by Catherine Steege and Michael Kelly through the BK Settlement Agreement with Mark Rittmanic signed on April 5, 2013, (See Bankr. Dkt. 198, 202, 204, 234, 257, and U.S. District Case no. 14-cv-04858).

Steege's absenteeism – wherein Ms. Steege had not appeared in court on the Pro Se Debtor-Party In Interest's case since two years prior when Ms. Steege had shown up in court to ensure that the Trustee's Settlement Agreement With Mark Rittmanic was approved by the Court], but you shouldn't. You shouldn't have done this.

And you may decide to appeal this [the Honorable Timothy A. Barnes denial of Catherine Steege's/Landon Raiford's motion to reconsider the March 17, 2015 order to disburse the $2,000 wild card payment to the Pro Se Debtor-Party In Interest], then the whole issue becomes even more public than it already is because, frankly, I'm not pleased. I'm not pleased with the way Jenner & Block has conducted this case. I'm not pleased with the way that Cathy Steege has conducted this case as the trustee in this matter.

Early in this case, Ms. Johnsson brought a motion seeking to have the trustee disqualified, and in that I explained to Ms. Johnsson that the actions that that the trustee takes when viewed across multiple cases, you cannot reach conclusions based on statistical analysis as to whether the trustee is, in fact, doing her job.

Well that's - - I still believe that. But I can reach conclusions on this case having viewed what's going on here. And what I see right now as I view this you are right. There has been a breakdown of communication. You are right. The parties are essentially going after each other. But bringing this particular motion strikes me as there being some sort of personal vendetta between the trustee [Catherine Steege/Landon Raiford/Jenner & Block LLP] and the [Pro Se destitute] debtor.

Now, again, you can bring your appeal [of the denial of the motion to reconsider the 3/17/15 order to pay the $2,000 wild card exemption to the Pro Se Debtor-Party In Interest] to your heart's content, and if I get reversed, I get reversed. But right now, I'm hoping that I get reversed on the settlement based on the way that these things have gone.

And here's  - - I'll tell you one thing further. Because I am concerned about the way this case is operating, I'm now going to request that the trustee [Catherine Steege] attend the next hearing in this matter. Not just you [Landon Raiford]. I want her [Catherine Steege] here. I want to hear from her. . . .

All right? If the payment is not made by Ms. Steege today and no appeal is filed, I will pursue whatever is within my authority with respect to the noncompliance of this order."

46.     **FURTHERMORE,** Catherine L. Steege and Michael Kelly are now defendants

in proceedings in the Circuit Court of Cook County, Illinois, County Department, Domestic

Relations Division, wherein Catherine L. Steege and Michael Kelly are accused of fraud against

Margaret Ann Johnsson and fraud on the Circuit Court of Cook County, Illinois, County

Department, Domestic Relations Division with respect to their signing and filing of the quit

claim deed on the Pro Se Debtor-Party In Interest's marital residence located at 1162 Scott

Avenue, Winnetka, Illinois 60093, which fraud litigation against Catherine Steege will no doubt

greatly increase Catherine Steege's adversarial prejudice and personal vendetta against the Pro

Se Debtor-Party In Interest.

47.     As evidenced in the filing and prosecution of the completely baseless, retaliatory

Adversary Complaint #14-A-00106, as outlined in paragraphs 2 through 46 of this adversary

complaint, Catherine L. Steege, Landon Raiford, the employees of the law firm, Jenner & Block

LLP and even Katy Gleason of the Office of the United States Bankruptcy Trustee have so

prejudiced themselves in this bankruptcy case number 11-B-38307 that there is no way they will

fairly represent the Pro Se, non-attorney, destitute and greatly harmed, Margaret Ann Johnsson

and/or the interests of Margaret Ann Johnsson's bankruptcy estate, bankruptcy estate creditors

and/or Margaret Ann Johnsson's debtor's surplus.

*48.*     **WHEREFORE, the fourth injunctive item of relief sought by the Pro Se**

**Debtor-Party In Interest is that Catherine Steege, Landon Raiford, any and all employees**

**of Jenner & Block LLP and/or Katy Gleason of the Office of the U.S. Bankruptcy Trustee**

**immediately be removed from working on this case in any capacity, whatsoever, and that**

**an honest, non-biased bankruptcy trustee actually be nominated to work on this case,**

**which nomination shall be subject to Margaret Ann Johnsson's review and approval of the**

**bankruptcy trustee nomination,** that Catherine Steege and/or Jenner & Block LLP be

immediately ordered to pay to the Pro Se Debtor-Party In Interest $65,000.00 as reimbursement

of her direct costs of litigation in this bankruptcy case, and for such other relief as this Court

deems just and reasonable, including but not limited to the granting of a brand new social

security number to Margaret Ann Johnsson, and granting leave to file criminal charges against

Catherine L. Steege, Landon Raiford, Michael Kelly and/or Jenner & Block LLP.


Dated  April 11, 2016

Margaret Ann Johnsson, Pro Se
534 W. Dickens, Chicago, IL 60614
(312) 560-1042

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>*Margaret Ann Johnsson* | DEFENDANTS<br>*Catherine L. Steege*<br>*Landon Raiford*<br>*Katy Gleason* |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>*Johnsson, Pro Se*<br>*534 W. Dickens*<br>*Chicago, IL 60614* | ATTORNEYS (If Known)<br>*Jenner & Block LLP*<br>*353 N. Clark*<br>*Chicago, IL 60654* |
|---|---|

| PARTY (Check One Box Only)<br>☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor    ☒ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☒ Trustee |
|---|---|

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

*Interference with discovery and litigation of a related Adversary Complaint Seeking an Injunction to stop and to replace Trustee*

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
(other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☒ 71-Injunctive relief – imposition of stay    (1)
☒ 72-Injunctive relief – other    (2)

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court
if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ *65,000.00* |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Margaret Ann Johnsson | BANKRUPTCY CASE NO.<br>11-B-3830 7 | |
| DISTRICT IN WHICH CASE IS PENDING,<br>Northern District of Illinois | DIVISION OFFICE<br>Eastern | NAME OF JUDGE<br>Timothy A Barnes |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF<br>Margaret Ann Johnsson | DEFENDANT<br>Mark R. Ittman; C<br>Michael Sabath | ADVERSARY<br>PROCEEDING NO.<br>16-A-00235 |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>Northern District of Illinois | DIVISION OFFICE<br>Eastern | NAME OF JUDGE<br>Timothy A Barnes |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br> | | |
| DATE<br>April 11, 2016 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Margaret Ann Johnsson | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.